```
                IN THE UNITED STATES DISTRICT COURT
               FOR THE WESTERN DISTRICT OF TENNESSEE
                           WESTERN DIVISION
_____

CAROLYN JENKINS,

        Plaintiff,

vs.                                      No. 05-2079-B/P

MID-SOUTH TRANSPORTATION
MANAGEMENT, INC.,

        Defendant.
_____

           ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
                          ORDER OF DISMISSAL
                                AND
                 ORDER ASSESSING APPELLATE FILING FEE
_____
```

Plaintiff Carolyn Jenkins filed an employment discrimination complaint under Title VII, 42 U.S.C. § 2000e-5, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, alleging that Defendant Mid-South Transportation Management, Inc. ("MTM"), terminated her employment because of her sex and age and failed to honor her disability retirement. On October 4, 2005, MTM filed its answer to Plaintiff's complaint. On June 30, 2006, MTM filed a motion for summary judgment, along with a supporting memorandum and attached exhibits. On August 14, 2006, Plaintiff Jenkins filed her response to the Defendant's motion for summary judgment.

The following undisputed facts appear in the record.

1. Carolyn Jenkins was employed with MTM from August 11, 1998 to January 29, 2003. (Exhibit A, Affidavit of Onita Jamieson, MTM's Director of Employee Benefits)

2.   Plaintiff was hired as a Bus Operator and remained in that capacity until the time of her termination.  (Exhibit A)

3.   On or about November 16, 2001, Plaintiff sustained a work injury to her left elbow and received Workers' Compensation benefits in the amount of $186,018.97 for temporary total disability, permanent partial disability, and medical benefits.  (Exhibit C, Plaintiff's deposition taken June 16, 2006; Exhibit 3 to Plaintiff's deposition, Workers' Compensation Statistical Data Form)

4.   After Jenkins' on-the-job injury, she only returned to MTM for retraining for the Bus Operator position on July 2, 2002, but refused to put her left hand on the steering wheel.  For this reason, Plaintiff was sent for a Functional Capacity Evaluation on July 11, 2002, in which it was determined that she could safely drive a bus.  However, Jenkins did not return to work at any other time after July 2002.  (Exhibit A)

5.   In effect at the time of Plaintiff's termination was a labor agreement between MTM and Amalgamated Transit Union Local Union 713 ("Union"). (Exhibit A and Exhibit A1, Contract No. 41 between MTM and Union, effective July 1, 2002 to June 30, 2005)

6.   The labor agreement addressed long periods of absences by employees in section 19(h) which provided as follows:

> Section No. 19-All Employees - Miscellaneous Provisions
>
> Any employee who is off work for one (1) year will be placed in an inactive status.  All benefits will terminate at that time with the exception of seniority.  The employee may purchase medical and dental insurance under the COBRA provision at the prevailing rate.

(Exhibit A1, p. 31)

7.   On January 13, 2003, MTM forwarded correspondence to Plaintiff, which read in pertinent part as follows: "In accord with the current labor agreement between MTM and ATU Local 713, any employee who is off work for one (1) year will be placed in an inactive status.  All benefits will terminate with the exception of seniority.  In that regard, you have been placed in inactive status effective on January 9, 2003...." (Exhibit D, Correspondence from G. Lawson Albritton, Jr., Director of Transit Operations with MTM)

8.  MTM has consistently taken the position that section 19 of the labor agreement does not imply that the employee's position must remain open indefinitely. To remain an employee with any employer, the employee must actually perform his/her job duties. (Exhibit A)

9.  On January 19, 2003, Plaintiff was discharged under section 19(h) of the labor agreement. (Exhibit A)

10. The discharge was subsequently grieved, and MTM and the Union negotiated an agreement to allow Plaintiff (as well as nine other employees who were terminated pursuant to section 19(h)) to return to work after meeting certain requirements. (outlined below in September 21, 2004 correspondence)(Exhibit A)

11. On September 16, 2004, following negotiations with the Union, MTM forwarded correspondence to Plaintiff which provided, in pertinent part, as follows:

    > ...the Company and the Union have reached a negotiated agreement [r]einstating you to employment without loss of seniority or benefits with no back pay. **Your reinstatement is contingent on several factors.** Please contact me immediately to move forward with this process. Your failure to contact me within two weeks of this notification will void your right to participate.

    (Exhibit A and Exhibit A2, correspondence from Ms. Jamieson to Plaintiff, dated September 16, 2004)(emphasis added)

12. Plaintiff subsequently contacted MRM regarding the application process for disability retirement benefits. On September 21, 2004, MTM confirmed in a letter to Plaintiff the requirements for obtaining such benefits:

    > Today we talked about your applying for disability retirement. Along with the completed application (included), we will need a letter from your physician/s that includes the following information:
    >
    > 1.  The nature of your disability as it relates to your injury on the job
    >
    > 2.  How long he/she has been treating you for this condition

3

> 3. The statement that declares you "**totally and permanently disabled from performing any type of work for profit**"
>
> 4. Office notes, lab results, and x-ray reports will be helpful, also, as we can forward these to the Retirement Board physician.
>
> After you have completed the above requirements, we will make an appointment for you to be evaluated by the Retirement Board physician. . . .

(Exhibit B, Affidavit of June Powell, Secretary Pension Board, and Exhibit B1, correspondence dated September 21, 2004)(emphasis added)

13. On or about September 22, 2004, Ms. Powell received a record prepared by Denise Blaylock, M.D., Jenkins' treating physician from Methodist Healthcare, which did <u>not</u> provide that Plaintiff was totally disabled. (Exhibit B) On that day, Ms. Powell informed Plaintiff that Powell still had not received any records to indicate that Plaintiff was totally disabled. At that time, Plaintiff stated that she would follow-up with her physician to obtain the required documentation. (Exhibit B)

14. On or about September 29, 2004, Jenkins submitted an application for retirement benefits based on her alleged disability to Ms. Powell for submission to the Pension Board of MTM. (Exhibit B and Plaintiff's Deposition, Exhibit 4, Application for Retirement Benefits) However, there were no medical records attached to the application and MTM still did not have information providing that Plaintiff was totally disabled. (Exhibit B)

15. Although Plaintiff received and reviewed the requirements for the application for disability retirement benefits, no medical documentation regarding her total disability was provided to MTM by any of Plaintiff's physicians. (Exhibit B)

16. On November 10, 2004, Plaintiff contacted Ms. Powell to check on the status of her disability retirement benefits application. Powell informed Plaintiff that MTM never received any documents from her physician stating that she was totally disabled, as related to Plaintiff's on-the-job injury. (Exhibit B) Plaintiff responded that she would just withdraw her "money." (Exhibit B)

17. MTM forwarded an application form to Plaintiff so that she could withdraw her contributions. The request for Plaintiff's

4

      contributions was received on April 30, 2005; a check consisting of Plaintiff's contributions was mailed to Plaintiff on June 3, 2005. (Exhibits A and B)

18. On October 29, 2004, MTM wrote to Plaintiff, stating as follows:

    In a letter to you dated September 16, 2004[,] you were given information on an agreement between the Amalgamated Transit Union Division 713 and Mid-South Transportation Management, Inc. and then by telephone read the requirements to move forward with the process outlined in the agreement.

    > Your reinstatement was contingent upon the following:
    >
    > 1. Take and pass a Fitness for Duty physical examination
    > 2. Taking and passing a DOT drug test
    > 3. Report within two weeks following notification to report
    > 4. Completing retraining

    This is to notify you the requirements for reinstatement were not followed; therefore, the agreement is null and void.

    Your termination date from employment with Mid-South Transportation management, Inc. [of] January 29, 2003 remains in effect.

    (Exhibit A and Exhibit A4, correspondence from Ms. Jamieson, dated October 29, 2004)

19. On February 1, 2005, Plaintiff filed a complaint alleging that she was terminated because of her sex and age, and that MTM failed to honor her disability retirement. She also alleged that Galvester Sander, a former employee of MTM, who is male and younger that Plaintiff, received his disability retirement benefits. (Exhibit E, Plaintiff's Complaint)

20. In her deposition on June 16, 2006, Jenkins stated that her complaint against MTM was <u>not</u> based on her termination, because she could not return to work in September 2004, although MTM was attempting to have her return. Instead, her claim against MTM was based solely on the failure to receive disability retirement benefits. (Exhibit C, p. 12, lines 8-11)

21. On June 16, 2006, Plaintiff further testified, in pertinent part, as follows:

    (a)    she was disabled at the time of her discharge and could not perform the duties of a Bus Operator (Exhibit C, p. 12, lines 13-16);

    (b)    MTM attempted to arrange for her to return to work in September 2004 (exhibit C, p. 12, lines 19-21);

    (c)    she applied for disability retirement benefits with MTM in September 2004 (Exhibit C, p. 13, lines 8-11);

    (d)    she was not aware of any records that stated she was totally disabled at any time in 2004 when she applied for disability retirement benefits with MTM (Exhibit C, p. 15, line 22; p. 16, line 4);

    (e)    she applied for Social Security Disability benefits on December 27, 2002, but was not deemed "totally disabled" until 2006 (Exhibit C, p. 16, lines 5-20);

    (f)    she contributed to the pension plan while employed at MTM and received approximately eight thousand dollars, the amount of her contribution through her vested withdrawal (Exhibit C, p. 17, line 24; p. 18, line 18);

    (g)    she believed that Galvester Sanders received disability retirement benefits although he is younger (Exhibit C, p. 20, line 23; p. 24, line 4);

    (h)    she never contacted MTM to follow-up on the status of her September 2004 application for disability retirement benefits (Exhibit C, p. 24, line 15; p. 25, line 10)

    (I)    Dr. Blaylock was her only treating physician who was to have sent medical records to MTM to show her medical status (Exhibit C, p. 30, lines 12-23);

    (j)    she did not know whether Dr. Blaylock had actually forwarded the medical records to MTM (Exhibit C, p. 31, lines 19); and

    (k)    if MTM did not have documentation that she was "totally disabled," then MTM would not have been able to pay her disability benefits (Exhibit C, p. 35, lines 6-11).

The grounds for Defendant's motion for summary judgment are:

A.    Plaintiff Jenkins cannot establish a _prima facie_ case of age or sex discrimination;

B.    Defendant has articulated legitimate, nondiscriminatory reasons for its employment decision;

6

C.  Plaintiff cannot establish that the reason for her discharge was pretextual;

D.  Plaintiff cannot establish a <u>prima facie</u> case for her ERISA claim;

E.  Defendant has articulated legitimate, nondiscriminatory reasons for its challenged action; and

F.  Plaintiff cannot show that the reason for denying her application for disability retirement benefits was pretextual.

> Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). So long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," <u>id.</u> at 323, the nonmoving party then "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). If the nonmoving party is unable to make such a showing, summary judgment is appropriate.

<u>Emmons v. McLaughlin</u>, 874 F.2d 351, 353 (6th Cir. 1989). In considering a motion for summary judgment, "the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." <u>Kochins v. Linden-Alimak, Inc.</u>, 799 F.2d 1128, 1133 (6th Cir. 1986).

Pursuant to Rule 56(e), a "party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of her pleading, but must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)(citations omitted). A genuine issue of material fact exists "if the evidence [presented by the non-moving party] is such that a reasonable jury could return a verdict for the non-moving party." <u>Id.</u> In essence, the

7

inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

This Court thus must determine whether the Defendant has established the absence of a genuine issue of material fact as to Plaintiff's claims of age and sex discrimination under Title VII. When an employee brings an employment discrimination claim, she bears the burden of establishing a prima facie case of discrimination. See, e.g., United States Postal Serv. Bd. of Gov. v. Aikens, 460 U.S. 711 (1983); Texas Dept. of Com. Affairs v. Burdine, 450 U.S. 248 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). These cases establish that a prima facie case consists of the following four elements:

1) Plaintiff's membership in a protected class;
2) the adverse employment decisions (i.e. the decision to discharge the Plaintiff);
3) the Plaintiff's qualification for the position from which he was terminated; and
4) the hiring of a non-member of the protected class to replace the Plaintiff.

In McDonnell Douglas, the Supreme Court set forth a methodology for evaluating evidence in discrimination cases. That method has been summarized as follows:

> First, the Plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the Plaintiff succeeds in proving the prima facie case, the burden shifts to the Defendant "to articulate some legitimate nondiscriminatory reasons for the employee's rejection." . . . Third, should the Defendant carry this burden, the Plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons

>    offered by the Defendant were not its true reasons, but
>    were a pretext for discrimination.

Texas Dep't of Comm. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981) (citations omitted). "The ultimate burden of persuading the trier of fact that the Defendant intentionally discriminated against the Plaintiff remains at all times with the Plaintiff." Id. at 253.

   To satisfy this burden in the context of age discrimination, Plaintiff must allege that she was a member of the statutorily protected age group (over 40), subjected to adverse action, treated differently than a similarly-situated person who was significantly younger in age, and that there is a causal connection between the adverse action and her age.  Simpson v. Midland-Ross Corp., 823 F.2d 937 (6th Cir. 1987)(applying McDonnell Douglas to the age discrimination context).

   It is undisputed that Jenkins is a 51 year old African American female who was ultimately terminated from her employment with the Defendant.  The Defendant's affidavits and exhibits establish, however, that the Plaintiff was not qualified for the position from which she was terminated.  Plaintiff testified in her deposition that she was not able to return to work or perform any of the duties of a Bus Operator.  (Exhibit C, p. 12, lines 13-16). Furthermore, Plaintiff's complaint, deposition, and response fail to relate a factual basis for any claim that MTM made any materially adverse employment decision based upon her sex or age. Kocsis v. Multi-Care Management, Inc., 97 F.3d 876, 883 (6th Cir.

9

1996)(citing McDonnell Douglas, 411 U.S. at 802). Jenkins has also not alleged or demonstrated that she was replaced by someone outside her protected class. Mitchell v. Toledo Hospital, 964 F.2d 577, 582-83 (6th Cir. 1992). Thus, she has failed to present facts sufficient to establish a prima facie case of either age or sex discrimination.

Likewise, Plaintiff has not demonstrated a prima facie case that MTM interfered with her rights to disability retirement. She must provide facts establishing "(1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled." Smith v. Ameritech, 129 F.3d 857, 865 (6th Cir. 1997). The Defendant's affidavits and exhibits reflect that Plaintiff was provided with the necessary information and forms to apply for disability retirement. After her medical records were received, Defendant contacted Plaintiff to advise her that those records were deficient in proving total disability. Although Jenkins later submitted her application, she provided no further medical records. (Exhibit B) Plaintiff does not recall following up with her treating physician to ensure her medical records were forwarded to MTM. (Exhibit C, p. 31, lines 7-19).

On the issue of interference with her receipt of disability retirement benefits, Jenkins offers only speculation and subjective conclusions which are inadequate to offset a properly supported summary judgment motion. Plaintiff's opinions do not satisfy her burden to offer facts or affidavits that would raise a genuine

10

issue of fact regarding her claims. Conclusory allegations and subjective beliefs are "wholly insufficient evidence to establish a claim of discrimination as a matter of law." Mitchell, 964 F.2d at 585.

Plaintiff has failed to present facts sufficient to establish a prima facie case on any issue raised in her complaint. Accordingly, the Defendant's motion for summary judgment is hereby GRANTED and the complaint is DISMISSED in its entirety.

The same considerations that lead the Court to grant the Defendant's motion for summary judgment in this case also compel the conclusion that any appeal as to those claims would be frivolous. Plaintiff has not presented any facts to support her claims of discrimination and, accordingly, cannot make a good faith argument that a genuine issue of material fact exists for trial. It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff is not taken in good faith and she may not proceed on appeal in forma pauperis.

The Sixth Circuit Court of Appeals decisions in McGore v. Wrigglesworth, 114 F.3d 601, 612-13 (6th Cir. 1997) and Callihan v. Schneider, 178 F.3d 800 (6th Cir. May 28, 1999) apply to any appeal filed by Jenkins. If she files a notice of appeal, Plaintiff must pay the entire $455 filing fee required by 28 U.S.C. §§ 1913 and 1917,[1] or attempt to renew her request for leave to appeal in forma

---

[1] The fee for docketing an appeal is $450. See Judicial Conference Schedule of Fees, ¶ 1, Note following 28 U.S.C. § 1913. Under 28 U.S.C. § 1917, a district court also charges a $5 fee:

11

pauperis by filing "within thirty days after service of the district court's decision as prescribed by Fed. R. App. P. 24(a)(4), a motion with [the Sixth Circuit] for leave to proceed as a pauper on appeal."  Callihan, 1997 WL 336307 at *3.  Under Callihan, if the appellant does not file the required motion or pay the filing fee within the thirty-day period, her appeal will be dismissed for want of prosecution.  If the appeal is dismissed, it will not be reinstated once the fee is paid.  Id.

IT IS SO ORDERED this 28th day of August, 2006

                                        s/ J. DANIEL BREEN
                                        UNITED STATES DISTRICT JUDGE

---

Upon the filing of any separate or joint notice of appeal or application for appeal or upon the receipt of any order allowing, or notice of the allowance of, an appeal or of a writ of certiorari $5 shall be paid to the Clerk of the district court, by the appellant or petitioner.